1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

UNITED STATES OF AMERICA,

                Plaintiff,

   v.

TRACY COITEUX,

                Defendant.

CASE NO. CR21-5184 BHS

ORDER

This matter is before the Court on Defendant Tracy Coiteux's motion to dismiss[1] the second superseding indictment (SSI) for lack of jurisdiction. Dkt. 138. The Clean Air Act makes it a crime to tamper with a diesel engine's Onboard Diagnostic system (OBD). Her motion to dismiss based on her claim that such tampering exposes one to only civil penalties is **DENIED**.

---

[1] Coiteux's motion for leave to file an overlength brief, Dkt. 137, is **GRANTED.**

## I.   BACKGROUND

The Government alleges that Tracy Coiteux and her co-defendants[2]  conspired to

"remove pollution control devices from diesel trucks," causing them to emit pollutants in

excess of federal limits and render the OBD ineffective. Dkt. 118, ¶ 1, 7-20. In typical

vehicle emissions systems, hardware components, their sensors, and the OBD work

together to ensure emission hardware components function properly in vehicles. Coiteux

explains how an OBD functions: "When the OBD system activates a check-engine light

and stores a diagnostic trouble code, it is alerting the operator to a likely need for

emission-related maintenance or repair, perhaps with some component in the emission

control equipment that is not working properly." Dkt. 138 at 11.

The Government alleges that Tracy and Sean Coiteux routinely directed

employees of their company, Racing Performance Maintenance Northwest, to remove

federally required pollution control hardware from diesel trucks (known as a "delete")

and tamper with the OBDs to prevent them from recognizing the delete (known as a

"tune"). The Coiteuxs and their employees allegedly tampered with the OBDs on

hundreds of diesel trucks and earned hundreds of thousands of dollars for doing so.

---

[2] Tracy Coiteux's four codefendants are (1) her husband, Sean Coiteux, (2) Nick Akerill, the general manager of one of the businesses she co-owned (Racing Performance Maintenance Northwest, LLC), and the corporate defendants, (3) Racing Performance Maintenance Northwest, LLC (RPM), and (4) the related sales business RPM Motors and Sales, LLC (RPM Sales). Akerill pled guilty in state court to violating the Washington Clean Air Act, and the government moved to dismiss Akerill's federal charges. On March 18, 2024, Sean Coiteux and RPM pled guilty to a single count of violating the Clean Air Act, and RPM Sales pled guilty to conspiracy. Tracy Coiteaux is the only defendant facing trial.

1    The SSI charges Coiteux with Conspiracy to Violate the Clean Air Act (CAA), in

2    violation of 18 U.S.C. § 371, and with eleven substantive violations of the CAA, in

3    violation of 18 U.S.C. § 7413(c)(2)(C). Dkt. 118.

4    Coiteux argues that the CAA's Subchapter II provides exclusively civil penalties

5    for tampering with OBDs in mobile pollution sources like diesel powered vehicles. Dkt.

6    138. She argues that Subchapter I's criminal sanction for tampering with monitoring

7    devices applies to stationary pollution sources, like power plants, but it does not apply to

8    mobile devices. She argues that an OBD is not a "monitoring device" as that phrase is

9    used in Subchapter I. Coiteux asserts that the Government therefore lacks a criminal

10   remedy under the CAA for the conduct alleged and has no basis to prosecute her. *Id*. at 5.

11   Consequently, she argues that the Court lacks jurisdiction to "preside over a *criminal* case

12   involving motor vehicle emissions." *Id*. at 19 (citing Fed. R. Crim. P. 12(b)(2)).

13   The Government argues that Section 7413(c)(2)(C)'s tampering prohibition

14   applies to "any monitoring device . . . under *this chapter* [the Clean Air Act],' regardless

15   of which subchapter requires them. 18 U.S.C. § 7413(c)(2)(C)." Dkt. 144. at 8. It argues

16   that the OBD is a "monitoring device" and that therefore § 7413(c)(2)(C) allows criminal

17   prosecution for tampering with it. *Id*. at 11. It argues that the fact Subchapter II permits

18   only civil penalties does not preclude criminal prosecution under Subchapter I.

19   Coiteux's argument is inconsistent with the CCA's plain language. Her motion is

20   **DENIED**.

21

22

## II.   DISCUSSION

**A.   It is a crime to tamper with any monitoring device required by the CAA.**

The Clean Air Act is Chapter 85 of United States Code Title 42. It is a crime to tamper with any monitoring device required under the CAA:

> (c) Criminal penalties
>
>       . . . .
>       (2) Any person who knowingly—
>       . . .
>             (C) . . . *tampers with . . . any monitoring device* or method
>             required to be maintained or followed under *this chapter*
> shall, upon conviction, be punished by a fine pursuant to title 18 or by
> imprisonment for not more than 2 years, or both.

42 U.S.C. § 7413(c)(2)(C) (emphasis added).

CAA Subchapter II addresses emissions standards for mobile sources, including primarily motor vehicles. Since 1992, it has required manufacturers to install on all new vehicles "diagnostic systems" capable of identifying emissions related malfunctions, alerting operators of the need for emissions related maintenance or repair, storing and receiving fault codes, and providing access to stored information. 42 U.S.C. § 7521(m)(1)(A). These systems are known as OBDs.

Subchapter II prohibits any person from removing or rendering inoperative any device required under Subchapter II, 42 U.S.C. § 7522(a)(3)(A), and from selling parts intended to bypass, defeat or render inoperative any device required under Subchapter II. 42 U.S.C. § 7522(a)(3)(B). 42 U.S.C. § 7524 permits the EPA Administrator to assess civil penalties against persons who violate § 7522, either through a civil action or administratively. 42 U.S.C. § 7524(a)–(c). But § 7524 makes clear that any Administrator

1     action does not "affect any person's obligation to comply with any section of this

2     *chapter*." 42 U.S.C. § 7524(c)(3)(B) (emphasis added).

3       Coiteux argues that tampering with an OBD subjects her to only civil penalties

4     under CAA Subchapter II, as a matter of law. But the CAA's criminal sanctions facially

5     apply to any person who tampers with any monitoring device required under "this

6     chapter"—the entire CCA—including any monitoring device required under Subchapter

7     II. Her assertion that "conduct subject to criminal penalties under 42 USC 7413(c)(2)(C)

8     is usually seen vis a vis 'stationary sources,' such as power plants, factories, foundries"

9     rather than motor vehicles is also unavailing.[3] Dkt. 138 at 9. That tampering sanctions

10     "usually" happen for stationary sources does not preclude the Government from seeking

11     sanctions for tampering with OBDs in a vehicle. Coiteux's  argument that there "is no

12     indication in any of the provisions of 42 USC 7401 et seq. that they apply to motor

13     vehicles" is similarly immaterial. *Id*. at 8. The only portion of 42 U.S.C. § 7401 et seq.

14     that is relevant in her case is the tampering provision. It states that if any CAA subchapter

15     required a monitoring device, the Government can prosecute for tampering with it.

16       The tampering provision dictates that violations can be punished with "a fine

17     pursuant to title 18 or by imprisonment for not more than 2 years, or both." 42 U.S.C. §

18

---

19       [3] Coiteux's motion relies partly on Dave Garrett's testimony. Garrett is offered as an

20     expert witness with extensive credentials in engineering and industry experience. Dkt. 142 (Garrett Decl.). Garret offers numerous legal conclusions, including that the tampering provision, 42 U.S.C. § 7413 (c)(2)(C), "does NOT give authority for any enforcement action, criminal or

21     civil, with regard to Subchapter II" and that "OBD systems are not what Congress envisioned as a 'monitoring device' subject to 7413(c)(2)." *Id*. at 8. His legal conclusions are not admissible

22     and his legal analysis is not persuasive. *See Nationwide Transp. Fin. v. Cass Info. Sys., Inc*., 523 F.3d 1051, 1058 (9th Cir. 2008).

7413(c)(2)(C). Although the criminal provision of the CAA at issue in this case is contained within Subchapter I, the tampering provision explicitly licenses the Government to impose its criminal penalties if a defendant tampers with any monitoring device required under any part of the CAA. Coiteux counters that the "penalty section of 42 USC 7413(c)(2)(C) is – at best – exceedingly vague in: (a) deeming an OBD a 'monitoring device' and (b) subjecting motor vehicle tampering to the criminal penalties of 42 USC 7413(c)(2)(C)." Dkt. 146 at 7. The Court disagrees. As part B of this order explains, an OBD easily qualifies as a monitoring device. And contrary to Coiteux's contention, 42 U.S.C. § 7413(c)(2)(C) does not subject any tampering with motor vehicles to criminal penalties, but rather only tampering with any monitoring device required by the CAA.

**B.    An OBD is a "monitoring device" under the CAA.**

The tampering provision renders it a felony offense for anyone to knowingly falsify, tamper with, or render inaccurate "any monitoring device or method required to be maintained" under the Clean Air Act. 42 U.S.C. § 7413(c)(2)(C). The parties agree that the CAA does not define the term "monitoring device." They disagree about whether an OBD is a monitoring device. When lacking a definition, "statutory terms are generally interpreted in accordance with their ordinary meaning." *Sebelius v. Cloer*, 569 U.S. 369, 376 (2013) (citation omitted). Dictionary definitions are a "usual source that might shed light on the statute's ordinary meaning." *Food Marketing Institute v. Argus Leader Media*, 588 U.S. 427, 434 (2019).

1    Coiteux argues that the OBD merely helps "to detect and diagnose" emissions

2    problems but "is not a monitor." Dkt. 138 at 11 (internal quotation marks omitted). She

3    does not explain how an OBD could diagnose a problem with the emissions system

4    without monitoring that system. She argues that to make the "leap" to conclude that an

5    OBD is a monitoring device, "we have to overlook the reality that 42 USC 7413(c)(2)(C)

6    does not define 'monitoring device' and resort to a regulation that simply uses the term

7    'monitor[]' in some fashion when dictating what an 'onboard diagnostic' system must

8    contain." Dkt. 146 at 6 (citing 40 C.F.R. 86.1806-05).

9    The Government argues that an OBD is a monitoring device. Dkt. 144 at 13. It

10   offers the dictionary definition of a "monitoring device" as "a piece of equipment or

11   mechanism designed to perform the special function to watch, keep track of, or check"

12   and asserts the OBD performs the special function to keep track of and check the

13   emissions of vehicles.[4] *Id*. at 13, 16. The Government also provides the legislative history

14   behind 42 U.S.C. § 7521(m)(1)(A) which requires diagnostic systems for emissions

15   controls in vehicles. It observes that courts and Congress alike have used the term

16   "monitor" and when describing OBDs: "'OBDs *monitor*, control, and record the

17   emissions released by automobile engines.' *Motor Equipment & Mfrs. Ass'n v. Nichols*,

18   142 F.3d 449, 453 n.3 (D.C. Cir. 1998) (emphasis added) (citing S. Rep. No. 101-228 at

19   97 (1989))." Dkt. 144 at 14.

20

21

22   ───────────────

[4] Beyond asserting that the Government "resorts" to a dictionary definition, Coiteux does not contest that the dictionary definition is a fair one. Dkt. 146 at 9.

1    The Court concludes that an OBD is a monitoring device for purposes of the

2    tampering provision. Coiteux's own explanation for how an OBD operates shows that it

3    is clearly designed to perform the "special function to watch, keep track of, or check"

4    vehicle's emission systems. Her argument that it diagnoses emissions problems without

5    monitoring an emissions system is strained. Furthermore, "the reality that 42 USC

6    7413(c)(2)(C) does not define 'monitoring device,'" Dkt. 146 at 6, does not mean that the

7    Court cannot adopt a reasonable definition supported by the plain ordinary meaning of

8    those terms. The fact that sister courts and Congress both repeatedly assert that OBDs

9    "monitor" emissions lends further support for this conclusion.

10   **C.      The Government is not restricted to the civil penalties provided in CAA
     Subchapter II.**

11       Coiteux asserts that the CAA Subchapter II[5] regulates pollution for motor vehicles

12   and prohibits tampering with emission control devices in motor vehicles including OBDs.

13   Dkt. 138 at 11–12. She argues that Subchapter II "provides the exclusive penalties in this

14   case, which are civil only" and that the Government cannot use criminal penalties in the

15   tampering provision. *Id*.

16       Coiteux correctly observes that Subchapter II directly prohibits "what the

17   Government claims occurred in this case." *Id*. at 13. She is also correct that Subchapter II

18   offers only civil penalties for violations of Subchapter II. *Id*. at 14. The fact that

19   Subchapter II offers its own civil penalties however does change the fact that the

20

21       [5] Coiteux's briefing, particularly her correct usage of the terms chapter, subchapter, and
     section when referring to various parts of the CAA, demonstrates her understanding of the
22   distinction between "chapter" and "subchapter."

tampering provision allows criminal penalties for tampering with *any* monitoring device required by *any* part of the CAA. The purpose of the civil penalties detailed in Subchapter II is not to preclude applicable criminal penalties, but rather to provide a framework for calculating civil penalties for motor vehicle emission violations.[6] The Government may be well within its rights to also seek the civil penalties detailed in Subchapter II, but it is not restricted to them where it alleges someone violated the tampering provision.

Coiteux offers an example of a case with allegations like those she faces where the Government opted to seek exclusively civil penalties. *Id*. at 15 (citing Ex. 3, *In the Matter of Dana Calloway, dba DJ's Diesel Consent Decree*). The Government counters with numerous cases where it utilized the criminal penalties for similar tampering with a monitoring device. Dkt. 144 at 12. These cases do little more than illustrate that the EPA has prosecutorial discretion. The Court is not persuaded by Coiteux's argument that "one must navigate a tortured path" to criminal prosecution here. Dkt. 146 at 2. One need only navigate the paragraph break between the plain language of the tampering provision in 42 U.S.C. § 7413(c)(2)(C) to the criminal penalties detailed in the next sentence of that provision.

---

[6] Other subchapters of the CAA offer similar civil penalty frameworks for different emissions sources. For example, Subchapter I, § 7413 (b) offers a "Civil judicial enforcement" framework for "major stationary sources."

1    Because the Court concludes that the plain language of the tampering provision

2    allows criminal penalties for tampering with OBDs, it does not address Coiteux's

3    arguments about the rule of lenity nor *West Virginia v. EPA*, 597 U.S. 697 (2022).

### III.  ORDER

Therefore, it is hereby **ORDERED** that Tracy Coiteux's motion to dismiss the

second superseding indictment, Dkt. 138, is **DENIED**.

Dated this 6th day of May, 2024.


BENJAMIN H. SETTLE
United States District Judge